UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HAGOP DEMIRJIAN,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.

No. 02 C 6672
(97 CR 789)
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The § 2255 petition in this case is as unavailing as the defense at trial. The petition is denied without an evidentiary hearing for the reasons below.

The petitioner was one of a number of people charged with a large scale cocaine conspiracy in which the seized drugs weighed several hundred pounds. The prosecution had obtained considerable evidence of his guilt. Petitioner was storing the seized cocaine, and his fingerprints were also found on some of the drug packaging. Additionally, two people that worked for the petitioner, as well as his own fiancé, testified against him. He even confessed at length to the FBI after receiving his *Miranda* warnings. At trial, petitioner testified that he had in fact performed the drug crimes described in the indictment, but sought to excuse himself on the grounds that he was coerced by threats from another conspirator named Moreno. This defense may have suffered from an inherent lack of jury appeal, because Moreno's threats were apparently motivated by the petitioner's failure to pay a large drug debt. In essence, the petitioner admitted his significant involvement in the

drug trade. His complaint here is not that the coercion defense itself was a mistake,[1] but that his counsel did not do a good enough job in offering evidence to support the coercion claim.

Petitioner's complaint about the ineffectiveness of his defense counsel stems from injuries petitioner sustained in April of 1996. At that time, four men wearing masks beat him badly and locked him in the trunk of a car. Although he somehow escaped the trunk, he then lapsed into a four-day coma at a hospital. Petitioner objects to his attorney's failure to present sufficient evidence about this beating. However, the attack petitioner is talking about is already clear from the trial record, and he offers no description of any evidence other than that which already emerged at trial. Also, the 1996 beating is, at best, a minuscule part of the coercion evidence that was offered. The majority of the evidence was petitioner's own testimony that Moreno had threatened his family and forced him to deal in drugs over a long period of time.

The problem with this incident, which occurred more than a year before the events charged in the indictment, is the complete absence of evidence that Moreno played any role in it. Petitioner is convinced that Moreno was behind the beating, but his suspicion is inadmissible opinion evidence. No reasonable jury could find that Moreno had perpetrated or commissioned the beating. I allowed petitioner to testify about how badly he had been beaten and also that, regardless of whoever might have done it, the beating made him particularly vulnerable to Moreno's later threats. Unless he was able to offer some actual evidence that Moreno was responsible for the attack, the petitioner was not

---

[1] It was not a mistake to offer this defense. The evidence of petitioner's performance of acts of drug trading was so strong that the only possible defenses were those which conceded the actions but disputed the existence of a criminal mental state.

2

entitled to discuss the incident further.[2] At this point he still has not put forth any additional evidence for his claims.

The respondent points out an undeveloped claim that evidence of the beating might have affected petitioner's physical or mental ability to stand trial. This claim is meritless. Judging both from his demeanor during trial as well as his extensive testimony, petitioner gave no indicia of a lack of competence. If counsel for either side had asked for an evaluation of his competency at any point during the trial, I would have found no *bona fide* doubt of competence.

Next, petitioner claims that defense counsel should have made an issue out of his understanding of English. Petitioner's first language is not English. He learned the language after many years in this country and spoke with a pronounced accent and imperfect grammar. At trial, defense counsel decided that, despite any slight imperfections, it was better for the petitioner to testify in the language of the jury rather than through an interpreter. If counsel had raised the question of petitioner's familiarity with English before trial, I might have just automatically called for an interpreter, as most judges do. However, by the time petitioner testified, it was quite clear that he

---

[2]The respondent thinks that I let in too much evidence and petitioner received more leeway than he was entitled to have. The duress defense is governed by a standard requiring that the threat be enough to force a reasonable person, objectively judged, to commit the offense. *See United States v. Willis,* 38 F.3d 170, 175 (7th Cir. 1994). At the time of trial I thought that standard for this defendant would include a reasonable person who had been badly beaten once before and, as a result, was more susceptible to threats. In retrospect, the standard should have been an reasonable person who had been badly beaten once before by the same person who is currently threatening him. Since petitioner only had a subjective belief that Moreno had beaten him, he could not have met that more appropriate standard. Therefore I do not find that defense counsel was mistaken in failing to push for more evidence of the beating. Petitioner has already had the opportunity to present more evidence than he was entitled to present, since the beating was not actually relevant. Even assuming that defense counsel inexcusably failed in some way to push for admission of more evidence about the beating, there was no prejudice within the meaning of *Strickland. See Lockhart v. Fretwell,* 506 U.S. 364 (1993). In actuality, if more detailed emphasis was put on the earlier attack, without evidence of Moreno's involvement, the fundamental inadmissibility of the whole incident might have become more clear both to myself and to the prosecutor, who did not object to some of the testimony.

3

did not need an interpreter. I also fail to see what difference an interpreter would have made. His testimony was not credible in English and there is no reason to believe the jury would have found him credible when speaking Armenian instead. In light of the petitioner's actual performance on the witness stand and his remarks at sentencing, he has not shown any prejudice from the lack of an interpreter at trial.

Petitioner claims that his sentence is unconstitutional because it is disproportionate when compared to the sentences of others involved in the conspiracy. Neither counsel at trial nor counsel on appeal can be faulted for making this argument. Various opinions contain language that can be patched together to support a disproportional sentencing claim, but the holdings of the decided cases have yet to actually open a door to this argument. *See Harmelin v. Michigan,* 501 U.S. 957 (1991); *Ewing v. California,* 538 U.S. 11 (2003). The sentences in this case are not disproportionate, because the law allows the courts to impose lower sentences in return for cooperation. The defendant closest in culpability received a sentence of about two-thirds of the sentence given to petitioner. However, that defendant was less culpable than the petitioner and also had a lower Criminal History Category. If the defendant Catano had been brought into this jurisdiction, tried, and received a lower sentence than petitioner, then there might be some moral force to petitioner's argument, but that did not occur. At the time I sentenced petitioner, I thought that the Guideline was too high. I still believe that it was, but the sentence that I would have given (about 25 years) would still have been greater than that of any other defendant I sentenced. There is neither deficient conduct by counsel nor prejudice to petitioner.

The next to last claim is based on the unconstitutionality of the Guidelines. This claim was not raised in petitioner's original §2255 petition and is untimely. I do not need to consider it, but I will note briefly that it is without merit. The appeal of this conviction finished in the fall of 2001. Defense counsel cannot be faulted for failing to anticipate the decisions voiding sentencing guidelines

4

almost three years later. Perhaps an argument could be made that after *Blakely* was decided in 2004, but before *Booker* was decided in 2005, a reasonable trial or appellate lawyer should have challenged the Guidelines, but the same argument does not apply in 2001. Additionally, the petitioner is barred from raising the issue now because *Booker* does not apply to cases after the appeal becomes final. *See United States v. Ceja*, No. 04-C899, 2005 U.S. Dist. LEXIS 4506, at *20 (N.D. Ill. Feb. 7, 2005).[3]

Finally, there is the claim that petitioner confessed after indictment, when the rule in *Massiah v. United States*, 377 U.S. 201 (1964) applied. *See Fellers v. United States*, 540 U.S. 519 (2004). *Massiah*, in contrast to *Miranda*, applies to non-custodial interrogations. This attack on the confession and the inadequacy of counsel to raise the issue at trial is both untimely and wrong. There was some doubt about this during the 1960s and 1970s, but it is now settled law that *Miranda* waivers are also *Massiah* waivers. *See Patterson v. Illinois*, 487 U.S. 285, 298-300 (1988). The trial established that *Miranda* warnings were given and the petitioner waived his rights. Defense counsel would have been wrong to raise this issue.

The petition to vacate the sentence is denied.

ENTER

*/s/ James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 26, 2007

---

[3]A related issue is compliance with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Counsel on appeal noted the possibility of an *Apprendi* issue in seeking to withdraw. The Court of Appeals, in fact, did instruct that the claim would be hopeless, even though *Apprendi* was not honored at trial. As the Court of Appeals noted in confirming his conviction and sentencing, the petitioner was convicted on three counts. *Apprendi* does not restrict the imposition of consecutive sentences. As a result, the petitioner could have received a maximum sentence of 60 years of imprisonment.